IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA M. ROHALEY, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 04-1075 |
| | ) | Chief Judge Donetta W. Ambrose |
| WKI HOLDING COMPANY, INC., | ) | Magistrate Judge Robert C. Mitchell |
|     Defendant. | ) | |

REPORT AND RECOMMENDATION

I.  Recommendation

It is respectfully recommended that the motion for summary judgment submitted on behalf of the defendant (Docket No. 15) be granted.

II.  Report

Plaintiff, Lisa M. Rohaley, brings this action against Defendant, WKI Holding Company, Inc. ("WKI"), asserting a claim under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1100-1145 (ERISA) arising out of Defendant's failure to pay short-term disability benefits to her after she allegedly became disabled on August 17, 2003.

Presently before this Court for disposition is a motion for summary judgment brought by the Defendant. For the reasons that follow, the motion should be granted.

Facts[1]

Plaintiff is an employee of World Kitchen, Inc. ("World Kitchen") and she worked at the

---

[1] These facts are taken from the Statement of Undisputed Material Facts filed by Defendant (Docket No. 17), which contains numbered paragraphs and citations to the record (Docket No. 18) in accordance with Local Rule 56.1(B)(1). Plaintiff has not submitted a response to these statements with numbered paragraphs and citations to the record, as required by Local Rule 56.1(C)(1). Pursuant to the Local Rules, these facts should be deemed admitted. W.D.PA.LR. 56.1(E). Moreover, Plaintiff does not appear to contest Defendant's facts.

company's Charleroi facility as a mixing operator until on or about August 17, 2003. (Compl. ¶¶ 5-6; Answer ¶¶ 5-6.) World Kitchen maintained a health and welfare program for its employees to provide short-term disability benefits. (Compl. ¶ 10.) The plan is sponsored by WKI, an affiliate of World Kitchen. Plaintiff is covered by the plan. (Good Aff. ¶ 4 & Ex. 1 at 3.)[2]

The plan is a welfare benefits plan subject to ERISA. Continental Casualty Company, which is related to CNA Group Life Assurance Company (collectively, CGLA), administers the plan pursuant to an Administrative Services Only Contract. (Rinaldi Aff. ¶ 5 & Exs. 1-2.)[3] Although CGLA administers the plan, WKI has the financial obligation to fund approved benefits. (Rinaldi Aff. ¶ 5 & Ex. 1 ¶ D.2.)

Under the plan, a covered individual is eligible to receive disability benefits if he or she has a "disability" or is "disabled" as defined in the plan. The plan provides that:

> *Disability* or *Disabled* means that *You* satisfy the Occupation Qualifier or the Earnings Qualifier as defined below.
>
> **Occupation Qualifier**
> *"Disability"* means that *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
> 1. continuously unable to perform the *Material and Substantial Duties of Your Regular Occupation*; and
> 2. not working for wages in any occupation for which *You* are or become qualified by education, training or experience.
>
> **Earnings Qualifier**
> *You* may be considered *Disabled* during and after the *Elimination Period* in any Weekly period in which *You* are *Gainfully Employed*, if an *Injury* or *Sickness* is

---

[2] The affidavit of Donald Good is attached to Defendant's Appendix (Docket No. 18) as Exhibit E.

[3] The affidavit of Jennifer Rinaldi is attached to Defendant's Appendix as Exhibit F.

> causing physical or mental impairment to such a degree of severity that *You* are unable to earn more than 80% or *Your Weekly Earnings* in any occupation for which *You* are qualified by education, training or experience.

(Good Aff. Ex. 1 at 3.)

The plan defines "Material and Substantial Duties" to mean "the necessary functions of *Your Regular Occupation* which cannot be reasonably omitted or altered." (Good Aff. Ex. 1 at 9.) The plan defines "Regular Occupation" as "the occupation that *You* are performing for income or wages on *Your Date of Disability*. It is not limited to the specific position *You* held with *Your* employer." (Good Aff. Ex. 1 at 9.)

Plaintiff's position as a mixing operator became automated and she was scheduled to be re-assigned to the position of a finishing operator with training to begin on August 25, 2003. As a finishing operator, she would have had shift changes that might have caused her to work in close proximity to her former boyfriend and his new wife if they were all on the same shift. Her last day of work was August 17, 2003 and she did not actually work a single day as a finishing operator. Defendant indicates that she could have been placed on an alternate shift so that she would not have to work with these individuals. (Good Aff. ¶¶ 5-8.)

Plaintiff applied for short-term disability benefits on or about August 27, 2003. Her submission included a telephonic intake form, a "medical assessment tool" completed by her treating physician, Dr. Richard Valinsky, and a letter from Dr. Valinsky dated August 26, 2003. The "medical assessment tool" indicated that her only restriction was the "avoidance of shift work" and that she had a "major depressive episode in the past" and was "vulnerable for reoccurrence when subject to stress." Dr. Valinsky's letter stated that she was not able "to deal with the stress of a reassignment of work duties or with shift work." Her claim indicated that the

basis for her claim was her job change and close proximity to her former boyfriend and his wife even though she had not actually worked in that position on or prior to the date she claimed to have become disabled. (Rinaldi Aff. ¶¶ 6-8 & Exs. 3-5.)

Her application was denied by CGLA on or about September 18, 2003. CGLA stated that:

> We understand your discomfort when working with your former boyfriend and his wife, however this does not represent a disabling condition. Dr. Valinsky reports you may have a depressive episode if you continue with this shift, but we have received no medical information at this time to support that you are unable to perform the material and substantial duties of your occupation. Therefore, you do not satisfy the definition of disability and we are not able to approve your claim for benefits.

(Rinaldi Aff. Ex. 6 at 2.) CGLA informed WKI of the decision to deny Plaintiff's claim the same day. (Rinaldi Aff. ¶ 9.)

On September 24, 2003, Dr. Valinsky sent CGLA another letter along with his progress notes dated from January 7, 2003 through October 13, 2003. The notes provided no new medical information. He letter stated that, "[i]n my previous correspondence, I did note that shift work was not acceptable because my understanding was that was all that was available to her. It is more accurate to state that with her current depression she could not deal with the normal demands of work." (Rinaldi Aff. ¶ 10 & Ex. 7.)

On October 21, 2003, CGLA sent a letter indicating that it had reviewed the additional information submitted by Dr. Valinsky and that it "did not alter our original decision to deny benefits." The letter invited Plaintiff to appeal the decision and requested that she supply additional information that would support her claim of disability. (Rinaldi Aff. ¶ 11 & Ex. 8.)

Plaintiff's counsel sent a letter to CGLA on February 17, 2004, requesting that the denial

of benefits be reversed. He included an undated letter from Dr. Valinsky, but no additional medical records. (Rinaldi Aff. ¶ 12 & Ex. 9.) The letter stated that Plaintiff

> would not be able to deal with the stress of work duties or with shift work due to a predicted relapse into severe major depression. She suffered from a severe major depressive episode which lasted for over three years and involved a suicide threat. The depression has moderated, but not entirely abated, with psychotherapy and psychotropic medication. But she is vulnerable to relapse should any additional stress arise in her life and the proposed job change and shift work would both amount to sufficient stress to cause a relapse in this vulnerable individual with the attendant danger [of] suicide.

(Rinaldi Aff. Ex.10.)

On February 24, 2004, CGLA sent a letter to Plaintiff indicating that her attorney's letter and Dr. Valinsky's letter provided no additional medical information to support a reversal of the prior denial of her claim. CGLA indicated that it would treat the letter as an appeal and the entire file would be sent to the Appeals Area for its review. (Rinaldi Aff. ¶ 13 & Ex. 11.)

The Appeals Area of CGLA independently reviewed all of the records submitted by Plaintiff, her attorney and Dr. Valinsky, as well as the records obtained from WKI, and determined that Plaintiff did not meet the definition of disability in the plan. (Troxell Aff. ¶¶ 5-7 & Exs. 1-11.)[4] In a letter dated April 9, 2004, CGLA concluded that "the totality of the medical evidence and information presented for review did not reasonably illustrate that [Plaintiff's] overall, global capacity had been rendered less than, that which is required for her to perform the substantial and material duties of [her] regular occupation." CGLA went on to state that "[t]he merits, evidence and information was found to not support [Plaintiff's] initial [or ongoing] preclusion from returning to the workforce and performing the essential duties of her regular

---

[4]  The affidavit of Robert Troxell is attached to Defendant's Appendix as Exhibit G.

occupation." On that same date, CGLA informed WKI of the denial of Plaintiff's appeal. (Troxell Aff. Ex. 12.)

On May 11, 2004, Dr. Valinsky sent another letter to CGLA stating that Plaintiff was not able to cope with stress of a new work assignment or with shift work and that she had major depressive episodes in the past. Dr. Valinsky stated that, in his judgment, "a new work assignment or shift work would create enough stress to trigger a relapse." Dr. Valinsky did not provide any medical information as to Plaintiff's current mental state, only his rendition of the past and prediction of the future. (Rinaldi Aff. ¶ 14 & Ex. 12.)

Procedural History

Plaintiff filed this action on July 21, 2004. She alleged that Defendant[5] breached its fiduciary duty in denying her a full and fair review of her request for short-term disability benefits, despite the information provided by Dr. Valinsky, and thereby denied her not only her claim but also a proper administrative review, in violation of 29 U.S.C. § 1132(a)(3)(B). She also alleged that Defendant failed to act with care, skill, prudence and diligence in administering her claim, failed to act in accordance with plan documents and failed to act for the exclusive purpose of providing benefits to her as a plan participant, in violation of 29 U.S.C. §§ 1132(a)(1)(B), (a)(3)(B) and 1104. Finally, she alleged that Defendant acted in bad faith in denying her claim despite Dr. Valinsky's report.

On February 15, 2005, an Order was filed (Docket No. 10) which granted in part and denied in part a motion to dismiss filed by Defendant, and adopted a Report and

---

[5] Plaintiff brought this action against CGLA. However, the parties stipulated to the substitution of WKI as the proper defendant and an order granting this stipulation and changing the caption of the case was entered on March 17, 2005 (Docket No. 12).

Recommendation that had been filed on January 11, 2005 (Docket No. 8). As a result, Plaintiff's claims for breach of fiduciary duty are no longer part of the case, and her remaining claim is for denial of benefits under § 1132(a)(1)(B). On August 22, 2005, Defendant filed a motion for summary judgment.

<u>Standard of Review</u>

Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Woodside v. School Dist. of Philadelphia Bd. of Educ.</u>, 248 F.3d 129, 130 (3d Cir. 2001) (quoting <u>Foehl v. United States</u>, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted)). In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. <u>Doe v. County of Centre, PA</u>, 242 F.3d 437, 446 (3d Cir. 2001); <u>Woodside</u>, 248 F.3d at 130; <u>Heller v. Shaw Indus., Inc.</u>, 167 F.3d 146, 151 (3d Cir. 1999).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'–that is, pointing out to the District Court–that there is an absence of evidence to support the non-moving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

Defendant argues that Plaintiff has not demonstrated that the administrator acted

arbitrarily and capriciously and therefore the decision denying her application for short-term disability should not be reversed.

ERISA section 502(a)(1)(B) provides that a civil action may be brought:

(1) by a participant or beneficiary–

> . . .
>
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

29 U.S.C. § 1132(a). In 1989, the Supreme Court resolved a conflict among the courts of appeals as to the appropriate standard of review in actions brought under § 1132(a)(1)(B) to review a denial of benefits:

> [T]he validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of the terms in the plan at issue. Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). When the plan gives the administrator discretionary authority, the court should apply an "arbitrary and capricious" standard of review, and the decision "will be overturned only if it is 'clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan.'" Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc., 222 F.3d 123, 129 (3d Cir. 2000) (quoting Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40, 41 (3d Cir. 1993)).

In Pinto v. Reliance Standard Life Insurance Co., 214 F.3d 377 (3d Cir. 2000), the Court of Appeals held that "when an insurance company both funds and administers benefits, it is

generally acting under a conflict that warrants a heightened form of the arbitrary and capricious standard of review." Id. at 378.  In addition, the court has held that an employer-fiduciary may be subject to a conflict of interest requiring heightened scrutiny when its plan is "unfunded," that is, when it pays benefits out of operating funds rather than from a separate ERISA trust account. Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Employee Health & Welfare Plan, 298 F.3d 191, 197-98 (3d Cir. 2002).  Finally, the court has noted other circumstances in which a heightened standard of review will be appropriate.  For example, when an administrator has "demonstrated procedural irregularity, bias, or unfairness in the review of the claimant's application for benefits," a heightened standard of review may be triggered.  Kosiba v. Merck & Co., 384 F.3d 58, 64 (3d Cir. 2004), cert. denied, 125 S.Ct. 2252 (2005).

The plan expressly states that "[t]he Administrator and other Plan fiduciaries have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to benefits in accordance with the Plan." (Good Aff. ¶ 4 & Ex. 1 at 11.)  In addition, the plan was funded by WKI and administered by CGLA.  This case does not present a conflict of interest.  Nor has Plaintiff identified any of the other possible reasons for applying heightened scrutiny in this case.  Therefore, the arbitrary and capricious standard of review should be applied.

In applying the arbitrary and capricious standard of review, a court "is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." Orvosh, 222 F.3d at 129.  Rather, the arbitrary and capricious standard is an "extremely deferential" one, allowing the Court to overturn a claim denial "only if it is clearly not supported by the evidence of record," or if it is "without reason, unsupported by substantial evidence or

erroneous as a matter of law." Pinto, 214 F.3d at 393 (citations and internal quotations omitted); Orvosh, 222 F.3d at 129 (citations and internal quotations omitted).

Plaintiff bears the burden of proof that the claims administrator's decision to deny benefits was arbitrary and capricious. Mitchell v. Eastman Kodak Co., 113 F.3d 433, 439-40 (3d Cir. 1997). She has failed to demonstrate that her claim meets this test.

Under the "occupation qualifier,"[6] the plan requires Plaintiff to show that she was continuously unable to perform the "material and substantial duties" of her "regular occupation." That is, she was unable to perform "the necessary functions of [her regular occupation] which cannot be reasonably omitted or altered." (Good Aff. Ex. 1 at 9.) "Regular occupation" means the occupation she performed for wages on the date of disability which is not limited to the specific position she held.

Plaintiff's claim relied upon Dr. Valinsky's progress notes, letters and the medical assessment form she sent to CGLA to support her claim for benefits. But Dr. Valinsky's notes provide no medical evidence establishing that Plaintiff was precluded from performing the duties of her occupation. His letters discuss only the specific circumstances of her proposed future position of finishing operator, but do not address her general ability to perform the material and substantial duties of her regular occupation irrespective of shift changes or having to work in close proximity to her ex-boyfriend and his wife.

Plaintiff argues that Defendant failed to accord sufficient deference to the opinion of Dr. Valinsky, her treating physician. However, the Supreme Court has held that "plan administrators

---

[6] The "earnings qualifier" does not apply because Plaintiff does not contend that she could work in a reduced capacity.

are not obliged to accord special deference to the opinions of treating physicians." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003). The Court further noted that:

> Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

Id. at 834 (footnote omitted).

Defendant did not arbitrarily refuse to credit Dr. Valinsky's opinions. Rather, it found that he had not supported them with medical evidence. Dr. Valinsky simply offered his opinion that a change in Plaintiff's work situation in which she would be performing shift work possibly in proximity to her former boyfriend and his wife would be too stressful for her. The administrator's conclusion that Plaintiff failed to demonstrate that she met the definition of "disability" under the plan (that is, she could not perform the material and substantial duties of her regular occupation) based on Dr. Valinsky's conclusory statements was neither arbitrary nor capricious.

For these reasons, it is recommended that the motion for summary judgment submitted on behalf of Defendant be granted.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

11

                    <u>s/Robert C. Mitchell</u>
                    ROBERT C. MITCHELL
                    United States Magistrate Judge

Dated: September 27, 2005

cc:    Honorable Donetta W. Ambrose
       United States Chief District Judge

       Scott W. Spadafore
       223 Second Street
       Monongahela, PA 15063

       O. Daniel Ansa
       Piper Rudnick LLP
       One Liberty Place
       1650 Market Street
       Suite 4900
       Philadelphia, PA 19103